UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AGRICULTURAL CONTRACTING SERVICES ASSOCIATION, et al.,<br><br>Defendants. | No. 1:19-cr-00003-DAD<br><br>ORDER RULING ON MOTIONS IN LIMINE<br><br>(Doc. Nos. 106, 108) |

This case is currently set for trial to commence on April 25, 2024. (Doc. No. 105.) The matter is now before the court on the following motions *in limine* filed by the parties: (1) the government's motion to exclude evidence related to the legal status of defendants' Worker's Compensation Program; (2) defendant Asay's motion to exclude evidence of his 1993 felony conviction in the Kern County Superior Court for violating California Corporations Code § 25541. (Doc. Nos. 106, 108.) A hearing on the motions *in limine* was held on March 12, 2024. (Doc. No. 117.)[1]

---

[1] Defendant Asay's unopposed motion for accommodation of his physical condition at trial was also heard on that date. (Doc. No. 117.) The court granted the motion from the bench, ruling that it would make reasonable accommodations for defendant Asay's medical condition as it presented at the time of trial and to the extent supported by an evidentiary showing of medical need. (*Id.*)

1

1    At the hearing, Assistant United States Attorneys Michael Tierney and Joseph Barton appeared on behalf of the government; attorney Anthony Capozzi appeared on behalf of defendants Agricultural Contracting Services Association, dba American Labor Alliance ("ALA") and Marcus Asay; and attorney Michael McNeely appeared on behalf of defendant Antonio Gastelum.  Having reviewed the motions, the oppositions and replies filed by the parties and after hearing the arguments of counsel, the motions *in limine* were taken under submission for decision.  Following the hearing, and as authorized by the court, counsel for defendants ALA and Asay filed a supplemental memorandum in support of the motion to exclude defendant Asay's prior conviction.  (Doc. No. 118.)

For the reasons explained briefly below, the court will grant in part and deny in part both motions *in limine*.

**I.    The Government's Motion to Exclude Evidence Regarding the Legal Status of Defendants' Worker's Compensation Program**

The government moves to exclude this evidence arguing:  (1) it is irrelevant to the conspiracy to commit mail fraud charged in Count One of the First Superseding Indictment which specifically alleges only that defendants caused Certificates of Liability to be issued to their clients which contained materially false and fraudulent statements indicating that National Insurance Companies were providing the coverage, in many cases along with false policy numbers, when in fact this was not the case (Doc. No. 46 at 5-6); and (2) to allow irrelevant evidence relating to whether defendants were legally authorized to sell worker's compensation coverage at all under California law or were entitled to an exemption from state regulation as an Entity Claiming Exemption (ECE), would unduly confuse the issues the jury would be asked to resolve in light of the federal charges and would be a significant waste of the jury's and this court's time because it involves a complex dispute between defendants and the State of California, a dispute which has been being litigated for many, many years and still is not resolved.  (Doc. No. 106.)

/////

/////

Although counsel for defendants ALA and Asay filed an opposition to the government's motion, those defendants, in essence, do not oppose the motion. (See Doc. No. 112 at 1.) ("[D]efendants do not intend to introduce evidence that the defendants were legally selling one of their financial products i.e., Workers Compensation coverage[.]"). Instead, defendants ALA and Asay focus their opposition brief on the contention that they are entitled to present a good faith defense to the charges. (*Id*. at 2.) The government does not contest any of the defendants' right to mount a good faith defense, as long as it relates to truth or falsity of the misrepresentations alleged in the fraud counts of the First Superseding Indictment. (Doc. No. 116 at 1-3.) The court nonetheless anticipates this issue of the scope of a viable good faith defense will likely continue to be the subject of discussion throughout the trial.

Counsel for defendant Gastelum, however, has opposed the government's motion in a more full-throated manner. (Doc. No. 113.) First, defendant Gastelum argues that the government's motion is both overbroad and at the same time insufficiently particular as to the evidence it seeks to exclude.[2] (*Id*. at 2-3.) Defendant Gastelum does, however, concede that the jury at his trial will not need to decide whether "ALA could legally offer" what he characterizes as "this benefit" and which the government refers to as "Worker's Compensation coverage." (Id. at 3.) This concession is significant in the court's view. Nonetheless, defendant Gastelum argues that whether ALA could legally offer the coverage must at least be touched upon in explaining his

/////

/////

/////

/////

---

[2] Defendant Gastelum also complains that both in a 2017 search warrant affidavit and in 2019 press releases following the return of the original indictment, the government claimed the defendants did not have proper licenses to sell the coverage and yet now seeks to avoid this issue. (Doc. Nos. 113 at 2; 113-1.) The court finds this argument to be wholly unpersuasive. The First Superseding Indictment in this case was returned long ago, on September 24, 2020, and it clearly and specifically alleges only that the defendants falsely and fraudulently represented to their clients that National Insurance Companies were providing the Worker's Compensation coverage when such was not the case and even issued Certificates of Liability to their clients which they knew contained material falsehoods. (Doc. No. 46 at 5.) That is all that matters.

good faith defense. (Id. at 4.)[3] Finally, in support of his opposition defendant Gastelum has submitted a copy of the Certificate of Liability; an email chain from August/September of 2016 between himself and others regarding the Certificates of Liability and other arguably related issues; a six page "status update" and timeline dated April 7, 2016, that he authored and sent to co-defendant Asay and a Jesse Solis addressing the larger issue of whether ALA was authorized to provide the coverage under state law but also apparently addressing the Certificates of Liability—stating that the state hadn't then yet determined whether to approve ALA's request "for inclusion of our workers compensation coverage certificates for all state regulatory and legal purposes"; and an August 26, 2016 opinion letter from attorney George J. Vasquez to co-defendant Asay regarding the legality of ALU's provision of worker's compensation benefits. (Doc. Nos. 113-2, 113-3, 113-4 and 113-5.)

In its reply the government argues that defendant Gastelum is certainly entitled to present a good faith defense based upon the contention that the allegedly false and fraudulent Certificates of Liability were mistakenly filled out and that ALA merely misunderstood the forms. (Doc. No. 116 at 2.) However, the government argues that defendant Gastelum may not present a good faith defense that is untethered from the actual fraud charged in the First Superseding Indictment. (*Id.* at 3-4.) In this regard, the government argues that defendant Gastelum is not entitled to present evidence that ALA was authorized to sell the coverage in question or that he was acting on the

---

[3] It appears that defendant Gastelum anticipates presenting a good faith defense based at least in part upon evidence that: (1) the Certificate of Liability Form to be submitted to state regulators did not anticipate coverage provided by an ECE like ALA and had to be completed in a different way than was ordinary and customary; (2) at some point in time those working with ALA mistakenly filled out the Certificates with the name and numbers of ALA's own National Insurance Company carrier in order to have them approved by state regulators; and (3) that as soon as he became aware of such errors he immediately took action to stop the Certificates from being filled out improperly. It also appears he contends that evidence as to the first of these three issues will touch upon the question of whether ALA was authorized to provide the coverage but should nonetheless be admitted. However, the court remains somewhat puzzled as to the precise contours of defendant Gastelum's theory of the defense in this regard. At first blush, the certificate does not appear to have obviously been modified. (*See* Doc. No. 113-2 at 2.) Moreover, the email thread submitted by defendant Gastelum in connection with the pending motion would appear to clearly indicate that in both April and August of 2016, he was well aware that ALA had not been added to the list of regular approved carriers or approved to issue worker's compensation coverage certificates in California. (Doc. Nos. 113-3 at 5, 113-4 at 3.)

advice of now deceased counsel Vasquez that selling the coverage was lawful, because such evidence has no relevance to a good faith defense to the charge—misrepresenting that National Insurance Companies were providing the coverage to ALA clients. (*Id.* at 4.)

The court finds the government's argument in support of its motion *in limine* to be well-taken, to a point.[4]  As an overarching principal, the court agrees that in light of the very specific fraud charged (i.e., the misrepresentation that coverage was being provided by National Insurance Companies), the jury will not be asked to determine whether defendants were authorized to sell that worker's compensation coverage under California law.  Indeed, as noted above, defendant Gastelum has conceded as much.  Accordingly, the court will not allow evidence to be introduced or arguments to be made at trial that relate solely to that issue.  However, it does appear that some of the evidence defendant Gastelum wishes to rely upon in support of his good faith defense specifically addresses the Certificates of Liability, how they were filled out at different times, communications with state regulators about the completion of the certificates and corrective actions that he took upon learning that ALA was providing information on the certificates reflecting the involvement of National Insurance Companies.  In the court's view, that evidence is directly relevant to defendant Gastelum's good faith defense even though it also, in part, touches upon the issue of whether ALA was authorized to provide the coverage under California law.  Although such evidence may be presented by the defense, the court will not allow the lawfulness of ALA providing the coverage to become the focus of the trial in this case.  While at times this may be a fine line to walk, the court will do its best to walk it and will expect counsel to do the same.

The parties may ask, what is the impact of this ruling?  The court cannot anticipate all of the evidence or testimony to be presented at trial.  Therefore, it will address only the documents

---

[4] The court also pauses to note that this motion does present an example of the difficulty in resolving many motions *in limine* prior to trial.  The court has, of course, reviewed the superseding indictment and the papers submitted by the parties.  However, this case did not involve significant pretrial motions practice and trial briefs have not yet been filed.  Thus, the court is to some degree lacking context as to the evidence and the defenses to be presented.  Accordingly, the rulings announced in this order will remain subject to reconsideration at trial depending on the evidence presented and any specific objection thereto.

which have been presented by defendant Gastelum in opposition to the government's motion. The Certificates of Liability themselves and testimony about their issuance in the form they were issued is obviously admissible. (Doc. No. 113-2.) The email thread from August/September 2016 is, at least in part, directly relevant to issuance of the Certificates of Liability clearly placed at issue by the superseding indictment even though they touch upon the legality of ALA providing the coverage. Accordingly, the email thread is admissible at least to some extent.[5] (Doc. No. 113-3.) The April 7, 2016 Status Update from defendant Gastelum and attached timeline is also directly relevant to issuance of the Certificates of Liability put at issue by the superseding indictment at least in part. This is clearly the case as to the status update. The timeline is a closer question in the court's view since it contains more detailed information relevant only to the legality of the program itself. (Doc. No. 113-4.) Therefore, as to the latter the court believes that significant redactions may be appropriate. *See* fn. 5, above. Finally, the August 26, 2016 opinion letter from deceased attorney George Vasquez to defendant Asay regarding the legality of ALA's provision of worker's compensation benefits fails to mention and has absolutely no relevance to the issuance of the Certificates of Liability or to the fraud charged in Count One. (Doc. No. 113-5.) That opinion letter is not relevant, cannot in any way provide the basis for a good faith/advice of counsel defense to the charged conspiracy and will be excluded from evidence at trial.

For these reasons, the government's motion *in limine* to exclude evidence relating to the legal status of defendant's worker's compensation program is granted in part and denied in part.

**II.     Defendant Asay's Motion to Exclude Evidence of Prior 1993 Fraud Conviction**

As noted above, in 1993 defendant Asay was convicted in the Kern County Superior Court of using a securities scheme to defraud in violation of California Corporations Code § 25541. He seeks to exclude evidence of that conviction at his trial pursuant to Federal Rule of Evidence 609, and cases interpreting that provision, arguing that the prejudicial effect of such

---

[5] If the government is able to provide a proposed redaction of the email thread that does not effectively gut it as to its relevant purpose, the court would consider a limited redaction. The court, however, has some initial skepticism as to whether such a redaction is possible.

evidence outweighs its probative value under the circumstances in this case.  (Doc. Nos. 108, 118.)

The government opposes defendant Asay's motion, arguing that his prior fraud conviction "may well be admissible" under Rule 609(b) and the five-factor test announced in *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000).  (Doc. No. 114 at 3.)  In addition, the government argues that in the context of a prosecution for fraud where the defendant's prior conviction is also fraud related, the probative value of the prior conviction is heightened.  The government also notes that defendant Asay's prior conviction may appropriately be used on cross-examination if the defendant places his good character at issue either through his own testimony or other evidence presented at trial.  (*Id.* at 4-5.)  Nonetheless, the government requests that the court defer ruling on the issue out of concern that if the court were to grant defendant's motion *in limine* now and then allow the use of the prior conviction on cross-examination in the event the defense places his character at issue, the court could run afoul of guidance provided by the Ninth Circuit in *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) ("[W]e hold that in conducting the requisite Rule 609(b) balancing, the district court must consider any prejudice that will accrue to the defendant as a result of the court's reversal of an earlier *in limine* ruling.").[6]

The court has considered all of the authorities submitted by the parties in their briefing and at the hearing and finds there to be some unresolved inconsistency among the various holdings.  Here, the parties do disagree on how the aged nature of the prior conviction should be calculated, with the government taking the position that the relevant dates make it twenty years old and the defense arguing that from prior conviction to this trial makes it 31 years old.  Either way, in the court's view the prior conviction is quite old and, of course, substantially older than ten years.  In this somewhat close case, the court finds this to be the dispositive factor in light of defendant Asay's lack of subsequent criminal history up until this prosecution.  Accordingly, evidence of his 1993 prior conviction will be excluded at the outset.  However, defendant Asay

---

[6] The government also correctly argues that the state court's granting of relief under California Penal Code § 1203.4 does not restrict the use of the prior conviction in this case.  (Doc. No. 114 at 6.)

7

and his counsel are put on notice that should his defense place his good character at issue, the 1993 prior conviction may be used for purposes of impeachment. The court has no concern that ruling on the issue now and in this fashion poses a risk of running afoul of the holding in *Bensimon*. The court has placed defendant Asay and his counsel on very specific notice as to the court's intention and the Ninth Circuit has approved of such an approach. In this regard, the Ninth Circuit has stated:

> We review a district court's decision to alter an *in limine* ruling for an abuse of discretion. *See United States v. Bensimon*, 172 F.3d 1121, 1125, 1127 (9th Cir. 1999). At trial, the district court contradicted its prior *in limine* ruling by admitting audio and video recordings of Velazquez's three previous border crossings for impeachment purposes. The district court acted well within its discretion in doing so. *See Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000) (providing that a trial judge "may always change his mind [regarding an *in limine* ruling] during the course of a trial"). The district court's ruling was not final, as the court expressly advised that it would "wait and see" if Velazquez testified, and Velazquez was "not entitled to a definitive [in limine] ruling." *Bensimon*, 172 F.3d at 1127. Moreover, the testimony of Velazquez's former supervisor put Velazquez's credibility at issue and that new information warranted the admission of the recordings. *Id.*

*United States v. Velazquez*, 734 Fed. Appx. 462, 464 (9th Cir. 2018).[7]

Therefore, defendant Asay's motion *in limine* to exclude evidence of his prior 1993 conviction is granted in part and denied in part.

## CONCLUSION

Accordingly, for the reasons set forth above:

1. The government's motion *in limine* to exclude evidence related to the legal status of defendants' Worker's Compensation Program (Doc. No. 106) is granted in part and denied in part; and

/////

/////

/////

---

[7] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

2.  Defendant Asay's motion *in limine* to exclude evidence of his 1993 felony conviction in the Kern County Superior Court for violating California Corporations Code § 25541 (Doc. No. 108) is granted in part and denied in part.

IT IS SO ORDERED.

Dated: **April 1, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE